## HORACE MIEXSELL *et al.* v. HENRY L. WALTON.

VENDOR AND PURCHASER—*Forfeited Payment*—*No Recovery.* When the resident agent of non-resident owners of a town lot makes a conditional sale of the lot for the sum of $1,200, with a cash payment of $200, and two deferred payments of $500 each, conditioned that if they are not promptly paid, the cash payment of $200 is to be forfeited, and the owners make the agent a deed of the lot as a matter of convenience, so that he can convey to the purchasers when they comply with the terms of the contract, and the agent, through fears of creditors of his, conveys the lot to a grantee, who, at the time of the conveyance, has a one-half interest in the contract of purchase, and subsequently acquires the other half interest, and such deferred payments are not made, and the grantee refuses to reconvey to the agent until a mortgage is executed in his favor for the $200 forfeited cash payment, and, after this is done, seeks to foreclose the mortgage, *held*, that he is not entitled to recover the $200 cash payment.

### *Error from Scott District Court.*

ACTION by *Walton* against *Miexsell* and others to foreclose a real-estate mortgage. Judgment for plaintiff. Defendants bring the case to this court.

*John A. Murray,* for plaintiffs in error:

1. The transfer from Horace Miexsell, plaintiff in error, to Walton, defendant in error, was a fraud concocted by Walton to hinder, delay and defraud Horace's creditors, and was null and void, and conveyed no title to Walton.

2. Before Walton had retransferred to Horace, he knew that the lot was owned by plaintiffs in error, Frank and John, and that Horace was not the owner, and could give no valid mortgage on the same.

3. Defendant in error did not consider the transfer from Horace to him as a conveyance of the real title, but as a subterfuge to defraud Horace's creditors and any others interested in the lot, and secure to himself the apparent legal title as a basis of further fraud. From the testimony, the motive of the transfer cannot be mistaken. It was, according to Walton's testimony, to be placed beyond the reach of Horace's creditors. He did not, he says, request the transfer to himself. He knew he was not entitled to it. This transfer, then, being in fraud of creditors, and any having an interest in the lot, was void; Walton was not a *bona fide* purchaser, and took no title, as Horace had none. Bump, Fraud. Convey., 3d ed., pp. 199–204. See, also, §§ 209, 210, 214–217.

Walton could not thus deal with the agent of Frank and John, and then gain a legal advantage by his own wrong. Story, Ag., 9th ed., §§ 228–321; *Moffitt v. United States,* 112 U. S. 24; Bump, Fraud. Convey., p. 448.

*Morse & Hubbell,* and *Douthitt, Jones & Mason,* for defendants in error:

As to the first and third propositions, plaintiffs in error claim that Horace Miexsell never, in fact, had any interest whatever in the lot in controversy except as agent for Frank W. Miexsell and John B. Wood. The testimony of plaintiffs in error also tends to show that Horace Miexsell never, in fact, had any interest in the said lot except as agent for Frank Miexsell and John B. Wood. If Horace Miexsell never in

fact had any interest in the lot, as claimed and proved by plaintiffs in error, any transfer of the lot he may have made could not have been in fraud of creditors, and void on that ground —and the transfer from Horace Miexsell to Walton could not have "been a fraud concocted by said Walton to hinder, delay and defraud Horace's creditors." Walton's motive in suggesting a transfer of the property is apparent from the testimony. He regarded himself as having an equitable interest in the lot. The legal title stood in Horace Miexsell, who was financially embarrassed and liable to be attached by his creditors at any time. The attaching of this lot by Horace's creditors would result in litigation, if not loss, to Walton, as to his equitable interest, and as Horace had not, in fact, any interest in the lot, the most reasonable and sensible thing for him to do was to divest himself of the legal title, and save the owners the trouble and expense of establishing their ownership. The manner in which the transfer was suggested by Walton proves beyond question his perfect good faith. Horace Miexsell testifies: "I became financially embarrassed. My creditors were pressing me, and Mr. Walton came to me one day and suggested that the lot be deeded over to the original owners or some one here; that it be taken out of my name or the creditors would take the lot." Is Walton to be charged with having concocted a fraud to hinder, delay and defraud the creditors of Horace Miexsell because he suggested to Horace that he deed a lot in which he (Horace) had no interest whatever to the rightful owners, and thus save himself and others equitably interested unnecessary litigation and expense in protecting their property?

As to the second proposition of plaintiffs in error, Frank Miexsell and John B. Wood conveyed the lot to Horace for the purpose of having him (Horace) handle it for them as though it were his own, and thereby conferred upon him the greatest possible authority in regard thereto. A stranger without notice, in dealing with Horace in regard to the lot would be protected in regarding him as the absolute owner thereof. One knowing Frank and John to be the owners, and

17—49 KAS.

knowing that Horace held the title as their agent, would be protected in any deal made with Horace in regard thereto that he did not know to have been forbidden by Frank and John. Walton would be justified in presuming that Horace had full authority to do everything in relation to the lot that he did do, including the execution of the mortgage, if he had no knowledge that it was forbidden by Frank and John. Parties dealing with agents will be protected in all transactions within the apparent scope of the agent's authority. The $200 paid on the lot had been accepted and retained by Frank and John, or their duly-authorized agent, Horace. Walton had been recognized by Horace as the owner of the equitable interest of Phipps and Kingery. The legal title had been conveyed to Walton, and he had been put in possession of the lot, and had remained in possession and been recognized as the owner for more than six months, and had made improvements thereon. Walton unquestionably had such an interest in the lot that he would have been protected had he been sued by Frank and John for a reconveyance of the legal title; and it logically follows that a mortgage executed by Horace to cover the equitable interest of Walton, and executed as a consideration for the conveyance by Walton of the legal title to Horace, should be enforced; and that Walton, under all the circumstances shown by the evidence in the case, is entitled to a personal judgment against Horace and C. J. Miexsell.

Opinion by SIMPSON, C.: On the 31st day of May, 1887, Frank W. Miexsell and John B. Wood, who then lived at Wellington, Sumner county, made to Horace Miexsell, who lived at Scott City, in Scott county, a deed to lot 12, in block 5, in Scott City. This conveyance was made as a matter of convenience, and to enable Horace to convey to persons with whom, as agent of Frank Miexsell and John B. Wood, he had made a contract to sell and convey. Horace, being in financial trouble, deeded the lot to Walton, the defendant in error, to avoid any attempt on the part of his creditors to interfere with it. The facts are, that Horace had made a con-

ditional sale of said lot for Frank Meixsell and Wood, and had received $200 cash on the sale, the balance of the purchase-money to be paid in two installments — $500 due January 6, 1888 and $500 due July 6, 1888; the $200 paid to be forfeited if subsequent payments were not made promptly. The deed to Horace from his brother and Wood was made on the 31st day of May, 1887, and filed for record at 11 o'clock A. M., June 7, 1887. The deed from Horace Miexsell and wife to Walton, the defendant in error, was executed on the 7th day of June, 1887, but not filed for record by Walton, who was register of deeds of Scott county, until the 3d day of October, 1887. In January, 1888, Horace Miexsell wanted Walton to deed the lot back to him, but Walton refused to do so until Horace and wife executed to him a note, secured by a mortgage on said lot, for the sum of $230, due June 1, 1888. Horace assented to this and executed the note and mortgage, and Walton deeded the lot back to Horace on the 16th of January, 1888, and recorded the mortgage on the 16th of January. The pretended consideration for this mortgage is the receipt Horace gave the option purchasers for the $200 paid on their purchase, and $30 paid by Walton for the construction of a sidewalk in front of the lot. Walton swears that, at the time the deed to the lot was made to him, he had purchased one-half of the option, and subsequently bought the other half. He also swears that he told Horace, when Horace had financial trouble, that he ought to deed the lot to some one. Walton commenced this action to foreclose the mortgage executed by Horace and his wife. The case was tried by the court, a jury being waived, and a judgment rendered in favor of Walton for the full amount of the note and mortgage.

The case is here for review, and it is claimed that the evidence is not sufficient to sustain the judgment. The following facts are established, and the evidence sustaining them is uncontradicted: The sale of the lot by Horace, as the agent of his brother and Wood, was a conditional one. The deferred payments were to be promptly met, or the cash payment of

$200 was forfeited. Walton, at the time he took title by the deed of Horace and wife, knew the conditions of the sale, because he had bought a one-half interest in the contract. Walton knew that Horace had title from his brother and Wood, because that deed was filed for record by him, as register of deeds, on the 7th day of June, 1887, on the same day that Horace and wife executed a deed for the lot to him, but his deed was not filed for record by him until the 3d day of October, 1887, long after the first deferred payment was due and unpaid, and hence, by the terms of the sale, the $200 cash payment was forfeited. Walton's knowledge of these things is sufficient to show that he did not take the mortgage in good faith and on the strength of any legal or equitable claim to be reimbursed of the $200 payment. This is enough to authorize us to recommend a reversal of the judgment.

It is recommended that the judgment be reversed, and a new trial ordered.

By the Court: It is so ordered.

All the Justices concurring.